***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner DeLuca. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner DeLuca with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the Workers' Compensation Act.
2. On March 5, 2001, an employee-employer relationship existed between plaintiff and employer-defendant.
3. On March 5, 2001, employer-defendant was insured by Atlantic Mutual Insurance Company.
4. Plaintiff's average weekly wage is $817.74, yielding a compensation rate of $545.19.
5. The issues to be resolved are as follows:
a. Are plaintiff's neck, right shoulder, and right arm injuries related to her compensable injury of March 5, 2001?
b. If so, to what benefits is she entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-four (44) years old. Plaintiff worked for employer-defendant as an area supervisor.
2. On March 5, 2001, plaintiff was injured while working for employer-defendant when she reached overhead to move a plastic box that she believed to be empty from a shelf. The box was filled with magazines and weighed an estimated fifty (50) to sixty (60) pounds. When plaintiff realized that the box was not empty, she attempted to push the box back onto the shelf. At that point, she felt a pop in her left shoulder and pain in her neck, left shoulder and left arm. The box fell to the floor.
3. On March 9, 2001, plaintiff presented to the Moore Regional Hospital Emergency Room. She saw Dr. Bahner, who diagnosed plaintiff with acute left shoulder pain.
4. Plaintiff began treating with Dr. Angelo Cammarata on March 19, 2001. Examination showed a prior rotator cuff tear, which had responded well to treatment and from which plaintiff was pain-free immediately prior to her injury on March 5, 2001. Plaintiff was diagnosed with a probable left rotator cuff tear, given limited duty, and referred for a MRI.
5. The MRI performed on April 5, 2001 revealed AC joint arthrosis with mild subacromial impingement, some accumulation of subacromial bursal fluid, and a partial tear of the supraspinatus tendon. Dr. Cammarata recommended that plaintiff be out of work and initiate physical therapy.
6. On or about May 15, 2001, plaintiff and defendants entered into a Form 21 agreement in which compensability of plaintiff's injury of March 5, 2001 was accepted. Payments of temporary total disability benefits were initiated, effective May 10, 2001.
7. Subsequent visits to Dr. Cammarata on May 21, 2001 and June 20, 2001, revealed that plaintiff's condition was not improved. Thus, it was decided that plaintiff would undergo surgery.
8. Among other things, records of plaintiff's pre-operative physical examination of June 28, 2001 report that plaintiff was experiencing headaches and pain radiating from her neck and shoulder. Plaintiff had also reported neck pain to Dr. Cammarata on occasions.
9. On July 24, 2001, Dr. Cammarata performed surgery on plaintiff's left shoulder. The surgery consisted of arthroscopic subacromial decompression, debridement of the rotator cuff, distal claviculectomy, and labral repair.
10. Following the surgery, Dr. Cammarata had plaintiff wear a sling for about six weeks. He also referred plaintiff to physical therapy, which began on or about August 14, 2001.
11. On September 14, 2001, Dr. Cammarata discontinued the physical therpy temporarily because plaintiff had re-injured herself during the therapy. Plaintiff also complained of neck pain at times during this therapy, as reflected in the notes of the physical therapist. The plaintiff was also instructed to begin wearing her sling again. Physical therapy resumed following her appointment with Dr. Cammarata on October 28, 2001.
12. On or about December 11, 2001, plaintiff reported to Dr. Cammarata for the first time that she was experiencing right shoulder pain. Dr. Cammarata opined that plaintiff's right shoulder pain was from overuse syndrome related to her injury of March 5, 2001.
13. At an appointment on January 28, 2002, Dr. Cammarata diagnosed plaintiff with subacromial impingement and a possible tear of the labrum in the right shoulder. During several subsequent visits with Dr. Cammarata throughout 2002, plaintiff continued to report varying degrees of pain in both shoulders. Dr. Cammarata never gave plaintiff an impairment rating for her right shoulder.
14. When plaintiff presented to Dr. Cammarata on November 4, 2002, he reviewed with her the results of a cervical spine MRI performed on October 30, 2002. The MRI revealed a broad-based disc bulge at C3-4 and a disc protrusion at C5-6. Plaintiff also continued to complain of headaches and neck pain and Dr. Cammarata referred plaintiff to a spine specialist.
15. Based on this referral, plaintiff presented to Dr. Ralph Loomis, neurosurgeon, on November 19, 2001. Dr. Loomis diagnosed plaintiff with a herniated disc at C5-6. Dr. Loomis repaired the herniated disc in a surgery performed on December 19, 2002. Dr. Loomis opined that plaintiff's herniated disc was causally connected to her compensable injury of March 5, 2001.
16. Plaintiff's medical records were presented to Dr. Joe Eswanik, an orthopaedic surgeon, for a records review of plaintiff's condition. As a result of the records only review, Dr. Estwanik opined that plaintiff's problems on her right side and shoulder and the total extent of her aggravation were unrelated to her March 5, 2001 injury by accident.
17. Dr. Loomis released plaintiff from his care without restriction on May 28, 2003. He later assigned her a 10% permanent partial impairment rating to the neck.
18. The Full Commission gives greater weight to Dr. Cammarata and to Dr. Loomis' opinion after actual examination and treatment of the plaintiff over that of Dr. Eswanik who only conducted a limited medical records review of the plaintiff.
19. The competent evidence in the record establishes that plaintiff's right shoulder condition was caused by or materially aggravated by her compensable injury of March 5, 2001 and that plaintiff's herniated cervical disc was also causally related to her compensable injury of March 5, 2001.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 5, 2001, plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of her employment with employer-defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's admittedly compensable injury by accident, plaintiff is entitled to receive temporary total disability benefits in the amount of $545.19 per week beginning May 10, 2001 and continuing through May 28, 2003 when plaintiff was released to return to work without restrictions. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's admittedly compensable injury by accident, plaintiff is entitled to receive permanent partial disability benefit for the 10% rating to her back. N.C. Gen. Stat. § 97-31.
4. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred for her compensable right shoulder injury and cervical disc injury as may reasonably be required to affect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-25;97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay to the plaintiff a compensation rate of 545.19 per week for temporary total disability benefits for her admittedly compensable injury by accident of March 5, 2001 from May 10, 2001 through May 28, 2003. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fee hereinafter provided.
2. Subject to a reasonable attorney's fee herein approved, the defendants shall pay to the plaintiff her permanent partial disability rating benefits for 30 weeks at a compensation rate of $545.19 per week for the 10% permanent partial disability rating assigned to her back. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fee hereinafter provided.
3. Defendants shall pay for plaintiff's medical expenses incurred or to be incurred as a result of the compensable right shoulder and cervical disc injuries as may reasonably be required to affect a cure, provide relief or lessen the period of disability.
4. A reasonable attorney's fee of 25% of the compensation benefits due the plaintiff under paragraph 1 and 2 of the award is approved for plaintiff's counsel.
This the ___ day of January 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 CONCURRING: S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
PTY:db